Daniel, Judge,
delivered a dissentient opinion as follows:
The Judge charged the jury that “if they could collect the fact, that the deceased was the object of the threat deposed to by P. Mangum, and that the prisoner went to the shop, with an intention to provoke a quarrel with the deceased, in order to gratify his avowed vengeance, then the killing was murder, notwithstanding the facts proved by Pollard.” This part of the charge is particularly objected to by the prisoner’s counsel. 'He says that there was wo evidence in *367 the case, which tended to shew the court and jury, that the prisoner sought a provocation to be given him by the deceased, that he might have a pretext to fire on him as he did, and that the judge should have told the jury, that there was no evidence in the case to support that position taken by the Attorney General. He contends that the cause or motive, that prompted the fire, should have been distinctly left to be found by the jury, with instructions from the court, that, if the cause was the next immediate provocation given by the deceased, by dragging the prisoner through the rooms and kicking him out of doors, then it was only a case of manslaughter; but, if the cause of the fire was upon a former grudge, then it was murder.
One reasonable creature killing another human being, with malice aforethought, is the legal definilion of murder. But for any assault, made with violence or circumstances of indignity upon a man’s person, as by pulling by the nose, if it be resented immediately by the death of the aggressor, and if it appear that the party acted in the-heat of blood upon the provocation, this will reduce the crime to manslaughter. 1 East. P. C. 233. Kel. 135, 4 Blac. 191. Such a provocation, the law presumes, might, in human frailty, heat the blood to a proportionable degree of resentment, and keep it boiling to the moment of the fact; so that the party may rather be considered as having acted upon a temporary suspension of reason, than from any deliberate malicious motive. 1 East- P. C. 258. In case of a legal provocation, strictly so considered, the heat of blood will extenuate the guilt ot the party, acting under its adequate influence, even though he make use of a deadly weapon, Í East. P. C. 258. It is admitted in the case before us, that the provocation given by the deceased, next immediately before the pistol was fired, (as deposed to by Pollard,) would, if true and standing alone, have reduced the killing to manslaughter. It is contended for the State, that the evidence of the witness Mangum and the subsequent killing of Beasley by the prisoner, was strong and sufficient presumptive evidence of aforethought malice against the deceased. I admit that it was sufficient evidence logo to the jury upon that point. But the question still re *368 turns, did the prisoner fire by force of the promptings of that aforethought malice, or was he moved to fire by the provocation, just then received? Malice aforethought is the result 0f deliberation; if the prisoner fired, when his blood was boiling by the provocation, when he was under a brevis furorand as it were without reason, the presumption arises that the act was done from the impulse of immediate anger and excitement. If so, it negatives the charge that it was done by the promptings of the aforethought malice. The jury might find a locus fenitentioe, or a cesser oí the former grudge, and that the killing was the rusult of the brevis furor, which the prisoner was thrown into by the immediate provocation. If. A. has malice against B, and intends to murder him, at a time when he can conveniently do it, B., ignorant of the design, but for some illegal cause or other, sets upon A. with such violence, that it becomes absolutely necessary for him to kill B. to save his own life; is tin's murder in A., because there was proof that, sometime before, he had malice against B.? I should suppose, not; and the jury, I think, would be- left to say that the death blow was given uuder the immediate and natural impulse of A. to save his own life, and therefore excusable bomieide. So likewise, in the case just supposed, if B. assault A. by taking him by the collar, and forcibly drag him through two rooms, and then kick him out of the door in the presence of company, and A. instantly fires a pistol and kills B.-, are the jury compelled to say this is murder, because of the antecedent grudge? Can they not say, if they believe the truth to be so, that A. was induced to fire, from the immediate anger or brevis furor, into which he was-thrown from the provocation just before received,-and- that it was manslaughter? It seems to me that the jury would be at liberty so to find, and that they ought so to find, unless it “ clearly appeared” that the prisoner killed under the former 'malice. The case of the Queen v. Kirkham, 34 Eng. C. L. R. 318, so far from being authority against this position, is a case, as it seems to me, in favor of it. The Reporters (Carrington and Payne) give the substance of the case thus: 11 Iu order to reduce the killing of a person to manslaughter, there must.not only be *369 a sufficient provocation, but the jury must be satisfied that the fatal blow was given in consequence of that provocation.If A. had formed a deliberate design to kill B., and, after this, they meet and have a quarrel, and many blows pass, and A. kills B., this will be murder, if the jury are of the opinion that the death was in consequence of the previous malice, and not of the sudden provocation.” What would the crime be, if the jury should be of the opinion that the death was in consequence of the sudden provocation, and not of the antecedent malice? I answer, only manslaughter. And then is it not a question for the jury to decide, whether the deathblow was inflicted in consequence of the previous malice or in consequence of the sudden provocation? It seems to me that it is. “In every case, where the point turneth upon the question, whether the homicide was committed wilfully and maliciously, or under circumstances justifying, excusing or' alleviating, the matter of fact is the proper and only province of the jury.” Foster’s C. L. 255. In the case of the Queen v. Kirkham, Judge Coleridge begins his charge to the jury, by shewing the distinction between the crime of murder by malice implied in law, from death happening by the use of a deadly weapon, where no provocation had been given, and the crime of manslaughter, where death is inflicted by a deadly weapon, but where a sufficient provocation had been given at the time. He says, that, in the first case, the slayer is cool and must be taken to -have malice; in the other, he has not malice, if he acted upon the provocation. He then proceeds to say, “ If a person has received a blow, and, in the consequent irritation, immediately inflicts a wound that occasions death, that will be manslaughter. But the slayer shall not be allowed to make, this blow a cloak for what he does; and, therefore, though there has been an actual quarrel, and the deceased shall have given a number of blows, yet if the party inflict the wound, not inconsequence of those bloios, but in consequence of previous malice, all the blows will go for nothing. So, in the present case, if there was stab given in consequence of a grudge, entertained a day two before, all that passed between these parties at the very time must go for nothing, for the simple reason that the blow® *370 were not'the cause of-the crime.” The Reporters then make Judge Coleridge to say to the jury, “So that if you believe, on the Monday or Wednesday before, the prisoner used the threats that have been sworn to, deliberately, then all the quarrel and the wrestling may be entirely dismissed from your consideration.” The English Reporter or the printer must, in the last quoted part of the charge of the Judge, have omitted these words: “ if the prisoner had killed his son with the knife, in consequence of those previous threats deliberately made.” If the omission, which I contend is made in the report, be not supplied in some way, then the report of the case makes Judge Coleridge contradict himself; for his remarks, just before made, had left the jury to understand, that if the fatal stroke was given from immediate provocation, which the blows given by the deceased had produced, it would be but a case of manslaughter, notwithstanding the antecedent grudge. In this way, the opinion of Judge Coleridge will correspond with what is said to be the law by Mr. East in his Pleas of the Crown 224, and other writers. Mr. East says: “ when fresh provocation intervenes between preconceived malice and the 'death, it ought clearly to appear that the killing was updn the antecedent malice; which may be difficult to shew satisfactorily, if the new provocation was a grievous one.” “In such cases,” says Hawkins, “it 'shall not be presumed they fought on the old grudge, unless it appear by the whole circumstances of the fact.” That Baron Cowyns understood Hale to hold the law to be the same way is to be seen, 4 Com. Dig. (Justices) M. 16. “Though there was former malice; they were reconciled and quarrel upon a new occasion. So if they fight upon malice and are parted, and afterwards fight upon a sudden, it 'is but manslaughter in each case.” He cites Hale’s P. C. 49, for both positions. In such a case, it seems to me, the jury are at liberty to say there was a cesser of the previous malicious intent, and that the presumption was, that the act flowed from a new and a different cause; and if the act flowed from the violent provocation immediately given, it could not flow from the antecedent malice: therefore the killing could not be murder. *371 for it lacked the necessary ingredient to constitute that crime, viz: killing with malice aforethought, or by the promptings of aforethought malice. Notwithstanding, I admit that the presumption may be repelled; and if the jury were satisfied that the killing was upon the antecedent malice, it would be murder. 1 East. 232 — 1 Hale P. C. 452. The law, as I have here stated it to be, was so understood by the Judge- and the counsel, both for the State and the Prisoner.
To get clear of what seemed to be the- recent provocation, the counsel for the State insisted, that the prisoner sought what was done by the deceased, as a pretext or cloak to fire upon him and kill him. We are now called upon to review th.e charge of the Judge upon this particular point in the case, under all the facts that had been proved by the two witnesses, Mangum and Pollard. Whether- the prisoner sought a provocation to be given by Beasley, that he might kill him, was the turning point of life or death in this case. Where is the evidence that the prisoner went to the shop with that view, or that he sought a provocation to kill him? They'never before had even angiy words; the shop was a tippling shop, and belonged in part to the prisoner’s father; the prisoner loved ardent spirits; was it not natural, then, that he should go there to gratify his propensity for drink? The prisoner’s being at the shop that night is, then, reasonably and naturally accounted for. What next? The prisoner and O’Bryan quarrel; who began the quarrel is not stated. Is it remarkable that a man, who was in drink at dinner time and in a tippling shop at night, should be in a quarrel with another man in the same shop? It is well known to be a frequent occurrence; therefore there is nothing, as it seems to me, in this circumstance. What next? The deceased, the keeper of the shop, tells the prisoner to behave himself; the prisoner says “ do you take it up?” Is there any thing remarkable in the fact of a man in a passion, in a war of words with another person, being thus accosted, mak-. jngjust such an answer? I think not. The deceased and the prisoner quarrel for some time; afterwards, the prisoner said he would go to bed; the deceased said he should not; the *372 prisoner said it was hard he could not go to bed in his father’s house, (Ragan, the part owner of the house, there and making no objection;) he took a candle and attempted to go up stairs, where there was a bed; the deceased, without any notice to the prisoner to leave the house, illegally takes him by the collar, drags him through two rooms and kicks him out of doors, and instantly the prisoner fired the pistol. And these slight circumstances are left by the court to the jury, to find the life or death fact, that the prisoner went to the shop that night with the design to seek a provocation to kill a man, that he never before had an angry word with. It seems to me that all these things, taken together, do not raise any, or at most, but a very slight presumption of the fact sought to be established, viz: that the prisoner sought a provocation, as a pretext to kill Beasley. I admit that a man may be found guilty of murder upon presumptive evidence. But the presumption must be strong and cogent, not leaving on the mind a rational doubt to the contrary. If the presumption of a material fact be slight, as I think it was in this case, it availeth nothing; it is no evidence in a life and death case, and the Judge should have so informed the jury. He did not; but he left the jury to find a fact, which would raise the crime from manslaughter to murder, upon circumstances which the law pronounces to be no evidence to prove that fact. The words made use of by the prisoner, after he had fired the pistol, in my mind, weigh nothing. They were or might be the ebullitions of a vulgar mind, made in the moment of anger and great exasperation from the recent provocation.
I think there should be a new trial.
Per Curiam. Judgment of the Superior Court affirmed.